## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

BRANDON O. K.,                                    Case No. 20-CV-2397 (JFD)

           Plaintiff,

v.                                                                      **ORDER**

KILOLO KIJAKAZI,

           Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brandon O. K. seeks judicial review of a final decision by the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on the parties' cross-Motions for Summary Judgment. (Dkt. Nos. 24, 30.) Because the Court finds that the Commissioner's decision denying DIB and SSI is supported by substantial evidence in the record, the Court denies Plaintiff's Motion for Summary Judgment, grants the Commissioner's Motion for Summary Judgment, and affirms the decision of the Commissioner.

## I.    BACKGROUND

On March 15, 2018, Plaintiff applied for DIB and SSI under Title II of the Social Security Act. (Soc. Sec. Admin. R. (hereinafter "R.") 302–15.)[1] In his application, Plaintiff alleged disability beginning on April 3, 2017. (R. 302, 306.) Plaintiff reported right eye

---

[1] The Social Security administrative record is filed at Dkt. Nos. 16 through 16-10. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

pressure, migraines and chronic tension headaches, neck and lower back pain, nerve narrowing, multiple bulging discs in the neck, minor disc protrusion in the lower neck, degenerative disc disease, arthritis throughout the body, mild carpel tunnel in both wrists, muscle spasms in the left side of the body, swelling in the left hand and foot due to muscle spasm, brain injuries, anxiety, and depression. (R. 364, 383, 418, 422, 423, 766.) The Social Security Administration denied Plaintiff's applications both initially and on reconsideration, and Plaintiff then made a timely request for a hearing before an administrative law judge ("ALJ"). (R. 222–26 (initial claim denial determination), 235–40 (reconsideration determination), 241–42 (hearing request).)

A.    **Administrative Hearing Before the ALJ**

The ALJ held a hearing on December 11, 2019, at which Plaintiff and a vocational expert ("VE") testified. (R. 104–31.) Plaintiff testified that he was a 33-year-old high school graduate who was terminated from his last job in 2017 when he could not work, yet failed to qualify for short-term disability for his neck pain, migraines, and the pressure behind his right eye. (R. 113–14.) The VE testified that, hypothetically limiting an individual to match Plaintiff's pertinent characteristics and limitations, a person could not perform any of Plaintiff's past jobs. (R. 128.) However, she testified that two possible jobs in the economy existed that would allow for such a hypothetical individual to work, including as a "routing clerk" and a "marker." (R. 129.)

B.    **The ALJ's Written Decision**

On January 13, 2020, the ALJ issued a written decision denying Plaintiff's DIB and SSI applications. (R. 8–25.) Following the five-step sequential evaluation process outlined

2

in 20 C.F.R. §§ 404.1520(a) and 416.920(a), at step one, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of April 3, 2017, through Plaintiff's last insured date of December 31, 2022. (R. 13.) At step two, the ALJ determined Plaintiff had the following severe mental impairments: adjustment disorder with anxiety and major depressive disorder.[2] (R. 14.) The ALJ found all other mental impairments either non-severe or not medically determinable. (*Id.*) At step three, the ALJ found that none of Plaintiff's mental impairments, alone or in combination with other impairments, met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, subpart P, appendix 1. (*Id.*) Because the medical evidence alone did not dictate a disability finding, between step three and step four, the ALJ continued to evaluate for disability by looking beyond the medical evidence to assess Plaintiff's residual functional capacity ("RFC").[3] In assessing Plaintiff's RFC between steps three and four, the ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent handling and fingering bilaterally; frequent reaching bilaterally; occasional overhead reaching bilaterally; the claimant must alternate sitting and standing by sitting for 15 minutes after every 30 minutes of standing while remaining on task; the avoidance of unprotected heights and workplace hazards; no work with vibrations; the avoidance of concentrated exposure to extreme temperatures and humidity; simple, routine tasks not at a production pace; occasional interaction with supervisors, co-workers, and the public; the claimant can tolerate occasional

---

[2] The ALJ also found other significant physical impairments, but as those are not in dispute. The Court focuses here on only those portions of the ALJ's decision that are in dispute.

[3] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

changes to a routine work setting; the claimant would be off task up to 10% of the workday; and the claimant would be absent from work one day per month.

(R. 17.) Based on Plaintiff's RFC, at step four the ALJ determined that Plaintiff could not perform any of his past relevant work. (R. 22–23.) At step five, by combining the Plaintiff's age, education, work experience, and RFC, the ALJ found that a person, like Plaintiff, who was in his early thirties, had graduated from high school, and had Plaintiff's past work experience and RFC, could perform the work required by two jobs in the national economy. (R. 23.) Therefore, the ALJ deemed Plaintiff not disabled. (R. 24.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1–7.) Plaintiff then filed this action for judicial review asking this Court to remand his case back to the ALJ for reconsideration because of identified errors. (Pl.'s Mem. Supp. Mot. Summ. J. at 14–15, Dkt. No. 25.) Plaintiff alleges four errors in the Commissioner's decision, arguing that the Commissioner (1) minimized Plaintiff's mental impairments which tainted her evaluation of his claim; (2) failed to include a medical expert's testimony at the December 11 hearing; (3) failed to clarify whether the VE accounted for the correct "off-task" parameter for available jobs; and (4) failed to adequately determine if the VE's testimony conflicted with the Dictionary of Titles ("DOT"). (*Id.* at 2–3.) Defendant also filed a Summary Judgment Motion (Dkt. No. 30), arguing that the record substantially supported the ALJ's decision because she properly evaluated Plaintiff's mental impairments after making a well-developed record of those impairments. (Def.'s Mem. Supp. Mot. Summ. J. at 1, Dkt. No. 31.)

4

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is the claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DBI and SSI, the claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). The disability, not just the

impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.   DISCUSSION

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. Plaintiff brings challenges to the Commissioner's evaluation process at steps three and five. This Court will recount additional facts of the record only to the extent they are helpful for context or necessary for resolution of the specific issues disputed at these steps.

### A.   Plaintiff's Challenges to the ALJ's Evaluation Process at Step Three

Plaintiff claims that, at step three of the Commissioner's evaluation process, she erred by minimizing Plaintiff's mental impairments, and by failing to include medical expert testimony at the December 11 hearing. Defendant disagrees, arguing that the Commissioner properly considered Plaintiff's mental impairments, and properly conducted the December 11 hearing.

### 1.   Whether the Commissioner Erred by Minimizing Plaintiff's Mental Impairments

Plaintiff first argues that the Commissioner erred by improperly minimizing his mental impairments, thereby "tainting" her evaluation. (Pl.'s Mem. Supp. Mot. Summ. J. at 3.) At step three, the Commissioner found that none of Plaintiff's impairments, alone or in combination with other impairments, met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (including under §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 14.) Plaintiff

argues that the record did not support the ALJ's finding that his "[m]ental status examination recorded by [Plaintiff's] treating providers is largely normal but for abnormality in mood/affect." (Pl.'s Mem. Supp. Mot. Summ. J. at 3 (citing R. 19).) Plaintiff alleges that the ALJ "cherry picked" parts of the record to support her findings that did not accurately capture his mental impairments. (*Id.* at 4.) He argues that, contrary to the ALJ's findings, the exhibits the ALJ cites show that Donna Bahr, Psy.D., L.P., found that Plaintiff merely *tried*—not that he *succeeded*—to keep a positive attitude to limit his anxiety and anger (*id.* (citing R. 764)), and that his regular counselor, Dr. Kooiker, found that Plaintiff consistently registered as depressed on PHQ-9 examinations (a nine-question patient health questionnaire used to screen the severity of a patient's depression), regularly described his mood as depressed, and needed medication increases (*id.* at 3–5 (citing R. 891–08)). Defendant disagrees, arguing that the Commissioner properly evaluated Plaintiff's alleged mental impairments in forming the RFC. (Def.'s Mem. Supp. Mot. Summ. J. at 6–9.)

A plaintiff bears the burden of proving their RFC. *See Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Such proof must take the form "of any medically determinable physical or mental impairment." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). Plaintiff points to evidence in the record that several mental health practitioners found that Plaintiff had serious difficulties with anxiety and depression, arguing that the ALJ failed to give those opinions proper weight. The SSA revised the regulations governing how the Commissioner assesses medical opinions for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Here, Plaintiff's claims were filed on March 15, 2018, after the 2017 amendments. (R. 302–15.) Following the 2017 amendments to the

regulations, "all medical opinions are evaluated using five factors: supportability; consistency; relationship with the claimant; specialization; and any other relevant factors." *Mark E. v. Kijakazi*, No. 20-CV-2047 (PAM/JFD), 2021 WL 6066260, at *5 (D. Minn. Dec. 7, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)), *R. & R. adopted sub nom. Mark J. E. v. Kijakazi*, No. CV 20-2047 (PAM/JFD), 2021 WL 6063631 (D. Minn. Dec. 22, 2021); *see also* 20 C.F.R. § 416.920c. Of those factors, supportability and consistency are the most important. *See Mark E.*, 2021 WL 6066260, at *5 (citing 20 C.F.R. § 404.1520c(b)(2)); *see also* 20 C.F.R. § 416.920c(b)(2). For the reasons that follow, the Court finds that the ALJ properly considered the record's medical source opinions at step three and when creating Plaintiff's RFC.

At step three, the ALJ weighed the record's evidence and determined that none of Plaintiff's mental impairments resulted in one extreme, or two marked, limitations in a broad area of functioning so as to automatically trigger a disability finding. (R. 15.) An extreme limitation would be found if Plaintiff could not function independently, appropriately, or effectively on a sustained basis, while a marked limitation would still allow Plaintiff to perform those functions, but his ability to do so would be seriously limited. (*Id.*)

The ALJ found that Plaintiff had *no limitations*—marked, extreme, or other—in understanding, remembering, or applying information. (R. 15.) Specifically, the ALJ noted that although Plaintiff reported having difficulty following multi-step directions, retaining or comprehending written information, preparing food independently, and handling money, the record showed that several mental health examiners found that Plaintiff

demonstrated generally normal mental functioning, and that he deviated only in the areas of a slightly below average short-term memory, and an abnormal mood/affect. (*Id.*)

The ALJ also found that Plaintiff had only *mild limitations* in adapting or managing oneself. (R. 16.) While Plaintiff claimed that he needed his wife to remind and assist him to perform personal care, and that he handled stress poorly, the ALJ found the record showed that Plaintiff's mental health treatment was conservative—requiring only counseling and psychiatric medication management rather than inpatient admissions—and that these treatments effectively stabilized Plaintiff's mood disorders. (*Id.*)

Finally, the ALJ found that Plaintiff had *moderate limitations* in interacting with others and in concentrating, persisting, or maintaining pace. (R. 15–16.) Although Plaintiff claimed he had trouble getting along with others because of his anxiety, aggression, depression, and frustration, the record showed that he typically hosted social events at his home twice a month, demonstrated normal eye contact and cooperative behavior, and did not test as defiant, guarded, defensive, evasive, hostile, or manipulative. (R. 15.) Plaintiff stated that he struggled with focusing, could not complete tasks taking more than five to ten minutes, and could only perform simple household tasks such as wiping off cleared counters and folding small laundry items. (*Id.*) The ALJ found that the record, however, showed that a mental health examiner found that Plaintiff had normal focusing, concentration, and attention function, could adequately complete various math and spelling exercises, and kept up with current news events. (R. 15–16.)

With Plaintiff's at-most moderate limitations, and bearing in mind that moderate limitations did not automatically trigger a disability finding, the ALJ next determined an

appropriate RFC for Plaintiff between steps three and four. The ALJ accounted for Plaintiff's moderate limitations discussed above in the RFC, finding that he had the capacity to do "simple, routine tasks not at a production pace; occasional interaction with supervisors, co-workers, and the public; . . . [and] occasional changes to a routine work setting." (R. 17.) Thus, rather than disregarding Plaintiff's mental limitations, the ALJ discussed them and incorporated them into Plaintiff's RFC.

In fashioning the RFC, the ALJ also considered all of Plaintiff's objective symptoms and their consistency with the record's objective medical and other evidence, as required by 20 C.F.R. §§ 404.1520(c), 404.1529, 416.920(c), 416.929, and Social Security Ruling 16-3p (governing an ALJ's evaluation of a claimant's symptoms and credibility). (R. 17, 22.) The ALJ found her RFC determination consistent with, and supported by, Plaintiff's conservative courses of mental health treatments based on largely unremarkable examinations, imaging, and treatments. (R. 20–21.) While Plaintiff points out that Dr. Bahr found that Plaintiff struggled to keep a positive attitude, during another visit, Dr. Bahr noted that Plaintiff received regular counseling with Ann Kookier, M.D.; that she found his mood and affect normal; and that, despite testing high for anxiety on a questionnaire, she found Plaintiff to be calm and appropriate. (R. 676.) Similarly, while Plaintiff highlights that Dr. Kookier found Plaintiff's mood to be anxious and depressed and concluded that he needed to resume his depression and anxiety medications (and do so at an increased dosage), she also noted that his mental status exam showed that he appeared to have normal eye contact and appearance, a cooperative attitude, appropriate affect, and intact judgment and memory. (R. 892.)

10

Beyond the medical professionals that Plaintiff cites, the ALJ also considered the consistency and supportability of other expert opinions, including those of state agency medical and psychological consultants John Bordwell, M.D., David L. Biscardi, Ph.D., and Lisa Slaikeu, who found that Plaintiff was generally able to mentally function (R. 134); that his anxiety largely related to his physical impairments (R. 140); and that while Plaintiff had some moderate—or even marked—mental impairments, he could still complete a normal workday (R. 148–49). The ALJ also considered the opinions of state agency medical consultant Ray M. Conroe, Ph.D., L.P., who found that Plaintiff "routinely performs multi-step tasks related to self-care, pet care, household tasks (as physical symptoms permit), [and] driving" and could "complete a normal workday." (R. 187, 195, 208.) The ALJ likewise considered the opinion of Monique Bordeaux, Psy.D., L.P., who performed a mental status exam and assigned Plaintiff a mental health prognosis of moderate, noting that he had an adjustment disorder with anxiety. (R. 674–76.) Additionally, the ALJ considered the opinion of counselor Julia Kieke, M.A., L.M.F.T., who believed Plaintiff could not work, finding that he exhibited marked and extreme limitations in various mental assessment categories. (R. 736–40.)

After considering these opinions on Plaintiff's mental impairments—many of which opined on the seriousness of Plaintiff's symptoms—the ALJ largely disagreed with their conclusions. (R. 21.) ALJs are not required to treat any medical opinion as controlling. *See Mark E.*, 2021 WL 6066260, at *6. Rather, they are required to appropriately discuss whether medical opinions are consistent and supportable. *Id.*

Here, the ALJ found that several medical opinions were inconsistent with Plaintiff's largely normal mental examinations and effective use of medications to manage his mood-related impairments, explaining that, because of this, she did not find their opinions consistent with the medical evidence and, therefore, persuasive. (R. 21.) *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quotation omitted) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *see also Wasen A.*, 2020 WL 823095, at *11 (citing *Hamman v. Berryhill*, 680 F.App'x. 493, 495 (8th Cir. 2017)) ("A conservative treatment plan is evidence that a claimant's symptoms are not as severe as alleged."). The ALJ also found that one examiner, Dr. Bordeaux, provided a persuasive assessment that was consistent with, and supported by, both the record and her own evaluation. (R. 20.) Rather than minimizing Plaintiff's mental impairments, Dr. Bordeaux found that Plaintiff had an adjustment disorder with anxiety, and the ALJ agreed and incorporated these limitations into Plaintiff's RFC. (*Id.*; R. 674–76.)

In sum, Plaintiff has not shown that the ALJ overlooked "medically determinable physical or mental impairment[s]" in the record that demonstrate the ALJ's RFC is unsupported by that record. 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). Instead, Plaintiff asks this Court to reweigh evidence that the ALJ had before her, and to reach a different conclusion. The Court may not entertain requests to reweigh evidence. *See Biestek*, 139 S.Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Where substantial evidence in the record supports the ALJ's decision, a Court will not substitute its own judgment for that of the ALJ. *Krogmeier*, 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The record demonstrates that mental health practitioners found that Plaintiff showed mental impairments in his

functioning to various degrees, and the Court cannot find that the ALJ improperly minimized those mental impairments. Rather, the ALJ acknowledged them, explaining why she found some expert's opinions about those impairments more persuasive or less persuasive in their consistency and supportability, and showed her awareness of Plaintiff's mental limitations in crafting his RFC. Therefore, the Court concludes that the Commissioner did not err by minimizing Plaintiff's mental impairments because there is substantial evidence in the record to support the ALJ's factual determinations on those impairments.

**2.      Whether the Commissioner Erred by Failing to Include Medical Expert Testimony at the December 11 Hearing**

Next, Plaintiff argues that the Commissioner erred when she failed to have a medical expert testify at the December 11 hearing about Plaintiff's mental health impairments, including his past brain injuries. (Pl.'s Mem. Supp. Mot. Summ. J. at 9.) Plaintiff contends that at step three of her evaluation, the ALJ "gave short shrift to the analysis of [Plaintiff's] mental health impairments with respect to the Listings of Impairments[4] by citing the exact same exhibits several times." (*Id.*) He claims that the ALJ has an obligation to develop a complete record, *see Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008), and that the absence of a medical expert or treating psychiatrist at the hearing demonstrates that the ALJ erred and based her decision on an incomplete record. (*Id.*) Defendant argues that Plaintiff fails to indicate which listing he met or equaled that the ALJ overlooked, or what

---

[4] The Listing of Impairments describe, for each major body system, impairments that are considered severe enough that they prevent an individual from engaging in any gainful activity.

medical evidence in the record supports his contention. (Def.'s Mem. Supp. Mot. Summ. J. at 12–13.)

Courts may disregard mere conclusory assertions that an ALJ failed to consider whether a plaintiff met a particular listing when a Plaintiff offers no analysis of the relevant law or facts regarding that listing. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Here, Plaintiff neither identifies any relevant listing, nor points to evidence in the record that matched that listing's criteria. Moreover, even if the Court entertained Plaintiff's unsupported argument, an ALJ is not required to have a medical expert attend a hearing. *See* SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017) (stating that "adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s)") (emphasis added). Beyond this, a plaintiff bears the burden of proving that their impairment met or equaled a listing's specific medical criteria. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Here, the ALJ considered various mental impairment listings, finding none present in the record before her. She specifically considered whether the claimant had "any neurological deficits as described in any part of medical listing 11.01," concluding that he did not. (R. 14.) She thoroughly considered the "paragraph B" listings for mental impairments, finding—at most—only moderate impairments that did not seriously limit his mental function and, thus, did not satisfy any listing under "paragraph B." (R. 15–16.) The ALJ reached a similar conclusion regarding the "paragraph C" listings 12.00D, 12.04, and 12.06, finding no evidence that Plaintiff's symptoms or functioning would be

exacerbated or worsened by environmental changes or increased demands, or that he had a history of hospitalization such that he would have repeated work absences. (R. 16.)

On this record, and absent anything more than conclusory arguments from Plaintiff, the Court cannot find that the Commissioner erred when she determined that Plaintiff's mental impairments did not meet or equal a listing at step three. Plaintiff may disagree with the Commissioner's conclusions, but where the Court finds substantial evidence supporting those conclusions, the Court may not. *See Biestek*, 139 S.Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings at step three of her evaluation process, and that the ALJ did not err as Plaintiff claims by minimizing Plaintiff's mental impairments, or by not having a psychiatrist or other expert testify at the December 11 hearing.

**B.     Plaintiff's Challenges to the ALJ's Evaluation Process at Step Five**

Plaintiff claims that, at step five of the Commissioner's evaluation process, she erred by relying on an incomplete record due to her failure to confirm that the available jobs identified by the VE allowed for being off-task 10% of the time, and by failing to sufficiently ascertain whether the VE's testimony conflicted with the DOT. (Pl.'s Mem. Supp. Mot. Summ. J. at 7–8.) Defendant disagrees, arguing that the Commissioner properly questioned the VE. (Def.'s Mem. Supp. Mot. Summ. J. at 9–11.) For the reasons that follow, the Court finds that the ALJ properly questioned the VE and, therefore, relied on a complete record at step five of her evaluation.

####    1.    Whether the Commissioner Erred by Failing to Clarify the 10% Off-Task Parameter During the Vocational Expert's Questioning

Plaintiff argues that the Commissioner did not clarify whether the jobs that he could hypothetically perform included a parameter that he would be off-task for 10% of the workday. (Pl.'s Mem. Supp. Mot. Summ. J. at 6 (citing R. 128).) Plaintiff cites caselaw in which a VE testified that "being off task 10% of the time would be job preclusive." (*Id.* at 7 (citing *Champion v. Saul*, No. 4:18-CV-2045 (RLW), 2020 WL 1065998, at *2 (E.D. Mo. Mar. 5, 2020)).) Defendant argues that Plaintiff's assertion has no merit because the ALJ clearly obtained testimony from the VE that included the 10% off-task parameter. (Def.'s Mem. Supp. Mot. Summ. J. at 10.)

Plaintiff's dispute with the Commissioner arises under step five of the five-step process used to evaluate Plaintiff's application. If the ALJ determines at step four that a claimant's RFC does not allow them to return to their past work, then at step five, the burden shifts to the Commissioner to prove that the claimant can do other work appropriately limited by their RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000). To meet this burden, the Commissioner must show both that Plaintiff's RFC will allow them to adjust to other work, and that such other work exists in sufficient numbers in the national economy. 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Commissioner can satisfy this requirement by eliciting testimony from a VE on hypothetical questions that "set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments."

*Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010) (quoting *Hillier v. Soc. Sec. Admin.*, 486

F.3d 359, 365 (8th Cir. 2007)).

Here, the ALJ posed a first hypothetical question limited by the following

parameters:

> assume an individual of the same age, education and work experience as the
> claimant . . . who can work at the light exertional level, who can occasionally
> climb ramps and stairs, cannot climb ladders, ropes and scaffolds. Who can
> occasionally balance, stoop, kneel, crouch, and crawl. Who can frequently
> handle and finger bilaterally. Who can frequently reach bilaterally and
> occasionally reach overhead. Will need to alternate sitting and standing by
> sitting for 15 minutes after every 30 minutes of standing remaining on task;
> who must avoid unprotected heights and workplace hazards; who cannot
> work with vibrations; who must avoid concentrated exposure to extreme
> temperatures and humidity; who is limited to simple routine tasks not at a
> production pace; who can have occasional interactions with supervisors,
> coworkers, and the public; can tolerate occasional changes to a routine work
> setting *and would be off-task ten percent of the workday*.

(R. 128 (emphasis added).) Based on these hypothetical limitations, the ALJ asked the VE

whether such a person would be able to perform Plaintiff's past work. (R. 128.) The VE

responded no. (*Id.*) The ALJ then asked if there would be other work available in the

economy for such a hypothetically limited person. (R. 129.) The VE responded yes, noting

that such a person could work as a "routing clerk," for which there were approximately

50,000 jobs in the national economy, or as a "marker," for which there were approximately

310,000 jobs in the national economy. (*Id.*) The ALJ then moved to a second hypothetical

question in which she asked about job availability if she adjusted one of the parameters

(handling and fingering). (*Id.*) After a series of questions on that second hypothetical

question, the ALJ asked if the VE's entire testimony had been consistent with the DOT.

(R. 129–30.) The VE responded as follows:

17

It is, Your Honor. I will note [for] the 15 minute sit after 30 minutes of standing [requirement], the Dictionary of Occupational Titles addresses sitting, standing, and walking and up to statement [sic]. It does not indicate when, where or how it may occur throughout an eight-hour workday. Therefore, I based my answer on my education and my experience in analyzing jobs and placing individuals with disabilities. *Furthermore, questions regarding off-task or absenteeism, the Dictionary of Occupational Titles does not address those topics. Therefore, I've based my answer on my education and my experience in analyzing jobs and placing individuals with disability.*

(R. 130 (emphasis added).)

On this record, the Court finds no error in the ALJ's hypothetical questioning of the VE. First, the ALJ meticulously listed the parameters governing the hypothetical person's limitations in the first question that she asked the VE. At no time during the first question did the ALJ substitute any different parameters. Second, an express change of one of the original parameters was the primary difference between the ALJ's first and second hypothetical questions. When the ALJ intended to substitute a different parameter from those she provided in framing her first question, she did so intentionally and unequivocally in a new, separate question. Third, Plaintiff's counsel had an opportunity to cross-examine the VE, but declined. (R. 129.) Fourth, after the hearing, the ALJ's decision reflected an RFC that included the 10% off-task parameter and possible work in the two jobs that the VE identified. This demonstrates that the ALJ understood her initial parameters to govern her question about corresponding jobs in the national economy. And fifth, Plaintiff's claim that some cases have shown that "being off task 10% of the time would be job preclusive" fails to account for the complex combinations of limitations in claimants' RFCs which do not allow for direct application of one DIB and SSI case's off-task limitations to another.

Plaintiff cites to *Champion v. Saul*, but in that case—unlike here—the plaintiff was hypothetically limited to frequently (not occasionally) balancing, never (not occasionally) kneeling or crawling, sitting for five minutes hourly (not alternating sitting for 15 minutes after every 30 minutes standing), and walking ten minutes hourly due to pain (absent here). 2020 WL 1065998, at *2. Therefore, the Court finds that substantial evidence on the record supports the appropriateness of the first hypothetical question the ALJ posed to the VE, and that substantial evidence in the record also shows that the ALJ based her decision on the VE's answer in accordance with 20 C.F.R. §§ 404.1566(e) and 416.966(e).

> **2.    Whether the Commissioner Erred by Failing to Adequately Determine if the Vocational Expert's Testimony Conflicted with the Dictionary of Titles**

In his final argument, Plaintiff cites to *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014), for the proposition that ALJs have an affirmative duty to inquire whether a VE's evidence contradicts the DOT, and that this duty is not met by merely accepting a VE's "yes" when asked to confirm no inconsistencies are present. (Pl.'s Mem. Supp. Mot. Summ. J. at 8.) Plaintiff argues that the ALJ failed to perform that affirmative duty when she did not clarify whether the 10% off-task parameter, if applied to the jobs identified by the VE as hypothetically possible, would have precluded those remaining jobs and that, as a result, the VE's testimony might have contradicted the DOT. (*Id.* at 7–8.) Defendant disagrees, arguing that the VE's confirmation that her testimony did not conflict with the DOT, and her explanation for the ways that her testimony went beyond the information contained in the DOT, aligned with the ALJ's requirements under Social Security Ruling

00-4P. (Def.'s Mem. Supp. Mot. Summ. J. at 9–10 (citing SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000) (describing the standards for the use of VE evidence)).)

A VE's testimony must be generally consistent with the DOT and must reasonably explain any conflicts between their occupational evidence and the DOT. *See* SSR 00-4P, 2000 WL 1898704 at *2; *Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018). The Eighth Circuit has held that "unless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018).

Here, the ALJ asked the VE whether her testimony conflicted with the DOT, and the VE confirmed that there was no conflict. But the VE also went further than simply answering no. She clarified the precise points at which her testimony went beyond information contained in the DOT, and provided the basis for her extra-DOT information. Finding that this more than satisfies the Commissioner's obligations under Social Security Ruling 00-4P where the testimony was generally consistent with the DOT and that extra- (but not conflicting) DOT information was accompanied by a reasonable explanation, the Court finds no error occurred based on the December 11 hearing testimony from the VE.

On this record, the Court cannot find that the Commissioner erred during her development of the record at the December 11 hearing. The Commissioner had the authority to hold that hearing without a medical expert, and her questioning of the VE contained no reversible error. Therefore, the Court finds that substantial evidence also supports the Commissioner's findings at step five of her evaluation process, and that the

ALJ did not err as Plaintiff claims by failing to clarify the 10% off-task parameter with the VE, or by not sufficiently determining if the VE's testimony conflicted with the DOT.

Because the Court finds that substantial evidence in the record supports the Commissioner's findings, **IT IS HEREBY ORDERED THAT**:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 24) is **DENIED**;

2.    Defendant's Motion for Summary Judgment (Dkt. No. 30) is **GRANTED**; and

3.    The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 21, 2022                    _s/ John F. Docherty_
                                        JOHN F. DOCHERTY
                                        United States Magistrate Judge